COURT OF APPEALS
DECISION
DATED AND FILED

January 18, 2023

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.    **2022AP785-CR**

STATE OF WISCONSIN

Cir. Ct. No.  2020CF4102

IN COURT OF APPEALS
DISTRICT I

---

STATE OF WISCONSIN,

    PLAINTIFF-RESPONDENT,

  V.

MARVIN LEE ROGERS,

    DEFENDANT-PETITIONER.

---

APPEAL from an order of the circuit court for Milwaukee County: JEAN M. KIES, Judge. *Affirmed and cause remanded for further proceedings.*

Before Brash, C.J., Donald, P.J., and White, J.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1     PER CURIAM. Marvin Lee Rogers appeals from the non-final order of the circuit court denying his motion to dismiss a criminal weapon possession charge on the basis of double jeopardy.[1]  We conclude that the circuit court acted within its discretion to declare a mistrial and that there was manifest necessity to restart the proceedings.  Accordingly, we affirm the circuit court's decision to deny Rogers's motion to dismiss and we remand the case to the circuit court for further proceedings.

## BACKGROUND

¶2     Although this case arises out of a firearms possession charge, the issue before us is to review the court's discretion to order a mistrial.  The record reflects that the parties and the court agreed to resolve Rogers's charge in an "unorthodox" manner, attempting to rely only on a stipulated record in a court trial without sworn witnesses.  The circuit court realized after agreeing to this method that it was not sound under Wisconsin law.  To understand our resolution of the case, we now recite the basic underlying facts of the charge against Rogers and the procedural process employed before the circuit court.

¶3     According to the criminal complaint, on August 23, 2020, a Milwaukee Police Department officer stopped a vehicle on North 18th Street in Milwaukee due to incorrect registration.  While speaking with Rogers, the driver and sole occupant of the vehicle, the officer observed a firearm in the center

---

[1] As discussed later in this opinion, this court grants Rogers's leave to appeal the order. *See* WIS. STAT. RULE 809.50(3) (2019-20).

All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

console. Rogers told the officer he did not have a concealed carry (CCW) license; he further admitted he purchased the firearm and it belonged to him. Upon examining court records, the police ascertained that Rogers had been adjudicated delinquent for an offense that if committed by an adult would be a felony. On November 19, 2020, Rogers was charged with possession of a firearm by an adjudicated delinquent, contrary to WIS. STAT. § 941.29(1m)(bm).

¶4 The case proceeded against Rogers. At a July 1, 2021 hearing, Rogers's counsel informed the court that he had identified a possible defense, and Rogers wished to pursue a trial, rather than a plea hearing. Prior to the pretrial conference, Rogers's counsel informed the court by letter that he specifically requested a court trial. He contended that there was a triable issue in the case, namely whether there was a *mens rea* defense to the question of law presented by a possession of a firearm by an adjudicated delinquent charge. He asserted it was a matter of first impression under Wisconsin law whether WIS. STAT. § 941.29 requires a person to know about a prior felony conviction or adjudication in order to satisfy this element of the charge.

¶5 At the pretrial conference on September 2, 2021, the court conducted a thorough colloquy with Rogers before finding that he was making a "knowing, willing, and voluntary decision to waive his right to go forward" with a jury trial. The court found that Rogers instead chose to go forward with a bench trial to the court. The court stated it would approve Rogers's decision to pursue a court trial decision because he was presenting a question of law for the court to resolve. Trial counsel told the court that "there will probably be a stipulation to most facts. I think the [c]ourt may require Mr. Rogers' testimony about his state of mind."

¶6 On October 6, 2021, trial counsel and the prosecutor submitted to the court stipulated record materials comprised of: the criminal complaint in the current case; the report of the MPD officer who interviewed Rogers in the current case; the dispositional order and circuit court record in his 2003 juvenile matter; the criminal complaint in Rogers's 2017 Dane County charges; the reports of City of Verona police officers who arrested and interviewed Rogers in the 2017 Dane County matter; and the judgment and court minutes in the 2017 Dane County case. That same day, the circuit court began the proceedings, noting that the court trial was "a little unusual." The court stated that it understood that the "the parties have a stipulated factual basis that they're relying upon that's contained [in] and based upon documents that were provided to [the court] in a stipulated record."

¶7 The court first addressed Rogers:

> THE COURT: So you understand that—Mr. Rogers, that, instead of presenting witnesses who would come up here on the witness stand, as well as other evidence, that we're gonna have facts that are just presented by the lawyers, and I'm gonna rely upon them in making a determination in this case?
>
> [ROGERS:] Yes, Your Honor.
>
> THE COURT: You could have [trial counsel] call witnesses for you. You understand that?
>
> [ROGERS:] Yes, Your Honor.
>
> THE COURT: And you could also have him cross-examine the State's witnesses. You understand that?
>
> [ROGERS:] Yes, Your Honor.
>
> THE COURT: All right. Instead, we're gonna proceed in this unorthodox manner, if that's okay with you.
>
> [ROGERS:] Yes, Your Honor.

The court then addressed trial counsel:

THE COURT: All right. [Trial counsel], turning to you, did you discuss with your client his right to proceed to a jury trial in this case?

[TRIAL COUNSEL:] I have.

THE COURT: Did you also offer him the benefit of going forward with a court trial wherein I would hear evidence from witnesses?

[TRIAL COUNSEL:] We've discussed both a jury trial and a court trial, and we've discussed in detail alternative ways of accomplishing both. And after conferring with him multiple times … I can inform the [c]ourt that he is understanding his rights and what could have happened, even in a bench trial, and … he believes this is … an appropriate way to move forward, given the nature of the issue and the nature of the facts in this case.

….

THE COURT: Furthermore, after talking to your client about having a court trial, where we would present evidence, and the [c]ourt would have to listen to the testimony and weigh the credibility of the witnesses after seeing them, do you believe that your client is also making a knowing, willing, and voluntary decision to go forward in that regard?

[TRIAL COUNSEL:] Yes, Your Honor.

THE COURT: And finally, after carefully talking to Mr. Rogers, do you believe that he, after consulting with you, is making a knowing and voluntary decision to proceed on the stipulated record?

[TRIAL COUNSEL:] Yes, Your Honor.

Finally, the court addressed the State:

THE COURT: All right. Does the State have any objection to proceeding? …. [A]re you okay not going forward with a court [sic] trial wherein witnesses would be presented?

[THE STATE:] The State is comfortable with that. Yes.

5

> THE COURT: And you consent, or agree, to proceeding to trial on the stipulated record?

> [THE STATE:] Yes.

¶8 The proceedings then continued with statements from both trial counsel and the prosecutor. Trial counsel framed the question of law as whether to be convicted of a WIS. STAT. § 941.29 violation, a person must know about a prohibition on firearms in a previous felony conviction or felony-equivalence delinquency adjudication. Trial counsel asserted that the stipulated record showed that Rogers was adjudicated delinquent at age thirteen, which included a firearm admonishment, and that about twenty years later, he was charged in Dane County with carrying a concealed weapon. However, the Dane County case was resolved by amendment to an ordinance violation after the police there determined that there was no criminal record that would bar him from possessing a firearm. The State argued that under *State v. Phillips*, 172 Wis. 2d 391, 394-96, 493 N.W.2d 238 (Ct. App. 1992), a conviction under § 941.29 is not conditional on notification of a felony conviction or felony-equivalence adjudication. Trial counsel stated that previous cases with regard to §941.29 had only answered the question of the requirement of knowledge of possession—not knowledge of a felony status.

¶9 The court reviewed the contents of each of the documents in the stipulated record with the parties. The court then set a briefing schedule for the parties. Finally, the court set a date for a decision, but then reconvened the proceedings, stating:

> To clean up the record, I went through each and every one of the pieces of evidence that the parties are stipulating or agreeing can be considered for purposes of the trial on this stipulated record; so, at this time, do the parties join in moving all of those pieces of evidence into the record, State?

Trial counsel and the prosecutor agreed with the moving of the evidence into the record. The court then continued, "Then the [c]ourt will receive that evidence, and the record will be closed. And then I will await the closing arguments, briefs, of the State[,] the [d]efense, and we'll see you on the decision date."

¶10 Five days later, on October 11, 2021, the court contacted the parties and called them into a hearing because of the court's concern upon reflection about the "unorthodox" procedure. The court concluded that upon the basis of *State v. Beyer*, 2021 WI 59, 397 Wis. 2d 616, 960 N.W.2d 408, a recent case in which:

> [T]he Wisconsin Supreme Court considered whether or not the guilty plea waiver rule applies when a defendant pleads not guilty to an offense, but, then, stipulates to the inculpatory facts supporting each element of the offense and explicitly asks the Court to make a finding as to guilt or innocence at the close of the hearing where no witness has testified.

The *Beyer* court concluded that a stipulated finding of guilt is not permissible in Wisconsin. *Id.*, ¶24. The circuit court described that there, Beyer "could not be held to the stipulation he entered into. He entered into it relying on a procedure that the Supreme Court of Wisconsin has concluded is invalid." The case was remanded to the circuit court so the defendant could decide whether "to enter a plea or proceed to a trial in a valid manner." *Id.*, ¶29.

¶11 The circuit court decided that from reading the *Beyer* decision, it "concluded that what we did in court was the same or similar process as what had happened in" *Beyer*. The court, on its own motion, granted a mistrial, and "put the parties back to where they were," and expressed that in "the interests of justice," the court would need to take some testimony to make a decision. The circuit court concluded that manifest necessity for a new proceeding existed because the prior

7

procedure did not give Rogers a "fair and full trial." The court vacated the prior procedure and granted a mistrial over the defense objection.

¶12    After the hearing, Rogers filed a motion to dismiss the charge against him on the grounds of double jeopardy. He argued that jeopardy attached when the court received evidence against Rogers in the October 6 hearing, that the court closed the evidentiary record, and that the court declared a mistrial on its own motion, "over the specific objection of the defendant, without requiring the State to carry its burden to show manifest necessity, and without seeking alternatives to mistrial[.]" Therefore, he asserted that the court's plan to begin the process again would subject Rogers to jeopardy a second time, in violation of his constitutional rights.

¶13    The court conducted a decision hearing on the motion to dismiss in January 2022. Trial counsel posited that the *Beyer* case was not on point and urged the court to reconsider its decision to grant a mistrial. The State argued that Rogers was "attempt[ing] to relitigate the [c]ourt's decision to declare a mistrial." The circuit court stated that jeopardy attached in a court trial under WIS. STAT. § 972.07 when a witness has been sworn. Because in this case, there had been no sworn witness testimony and "we proceeded only on documents and a written stipulation," it concluded "that jeopardy has not attached." The court then reviewed various situations of manifest necessity to stop a trial, ultimately concluding that the prior proceedings did not follow Wisconsin law. Because the stipulated record procedure was not fair to the State or Rogers, the court believed there was manifest necessity to start over. The court vacated the prior proceedings.

¶14 In May 2022, Rogers filed a petition for leave to appeal the non-final order denying his motion to dismiss on double jeopardy grounds. Under this court's procedures, that same day, we ordered the production of transcripts pertinent to the double jeopardy arguments.

¶15 In June 2022, Rogers sought clarification of the petition for leave to appeal. Rogers and the State provided briefing on the issue of whether the petition should be granted and whether double jeopardy was at issue. Upon review of the briefing and record, we have decided to grant Rogers's petition for leave to appeal and we will now discuss the merits of his appeal.

## DISCUSSION

¶16 Rogers argues that jeopardy attached at the October 6, 2021 hearing when the stipulated record was received and evidence was closed. He contends that the circuit court's *sua sponte* decision to declare a mistrial was not supported by manifest necessity. Therefore, Rogers asserts that the circuit court erred when it denied his motion to dismiss on the grounds of double jeopardy. Conversely, the State argues that the double jeopardy analysis is not needed because jeopardy did not attach at the October 6 hearing because that proceeding was not a trial, but was akin to a plea. The State asserts that the circuit court could not properly declare a mistrial because no trial took place.[2]

---

[2] In its briefing, the State initially argued that Rogers waived his right to a court trial. Rogers refuted this idea, which the transcript of the October 6 hearing confirms. Further, the State submitted a clarification letter after briefing that Rogers was "correct that the context of the court's colloquy shows that the waiver discussion concerned the fact that no witnesses would be called at the proceeding."

¶17    Upon review, we conclude that there was manifest necessity for the mistrial because the proceedings on October 6 did not constitute a legal form recognized by Wisconsin. Therefore, the circuit court acted within its discretion to declare a mistrial and to deny Rogers's motion to dismiss on double jeopardy grounds.

¶18    A mistrial may be warranted for a "spectrum of trial problems[.]" *Arizona v. Washington*, 434 U.S. 497, 510 (1978). "[G]iven the importance of the constitutional protection against double jeopardy, the State bears the burden of demonstrating a 'manifest necessity' for any mistrial ordered over the objection of the defendant." *State v. Seefeldt*, 2003 WI 47, ¶19, 261 Wis. 2d 383, 661 N.W.2d 822. A manifest necessity is "a 'high degree' of necessity." *Id.* (citation omitted). "If a trial is terminated without manifest necessity and over the defendant's objection, the State is not permitted to commence a second trial against the defendant." *Id.*

¶19    "The [circuit] court's determination of 'manifest necessity' is discretionary and is entitled to considerable deference on review." *State v. Reid*, 166 Wis. 2d 139, 145, 479 N.W.2d 572 (Ct. App. 1991). "[O]n review the test is whether, under all the facts and circumstances, giving deference to the [circuit] court's first-hand knowledge, it was reasonable to grant a mistrial under the 'manifest necessity' rule." *State v. Copening*, 100 Wis. 2d 700, 710, 303 N.W.2d 821 (1981).

¶20    The record reflects that Rogers requested a court trial—he expressly waived his right to a jury trial and trial counsel reiterated that he was not entering a guilty plea to the charge. During the colloquy with the court, Rogers and trial counsel both affirmed that Rogers understood he was waiving his right to a court

10

trial that included testimony by witnesses. However, this was a waiver of a right to a non-existent process, one that did not allow the court to satisfy the "fact-finding mission" of a trial. *City of Cedarburg v. Hansen*, 2020 WI 11, ¶35, 390 Wis. 2d 109, 938 N.W.2d 463, *opinion modified on reconsideration*, 2020 WI 45, 391 Wis. 2d 671, 943 N.W.2d 544. The "purpose of a trial is to ascertain a defendant's guilt or innocence[.]" *State v. Zamzow*, 2017 WI 29, ¶25, 374 Wis. 2d 220, 892 N.W.2d 637.

¶21 The circuit court considered *Beyer* to drive the court to issue a mistrial. Trial counsel objects that the facts of *Beyer* were unlike the facts in Rogers's case. In *Beyer*, our supreme court examined the substance of the proceedings and concluded that rather than a trial, it more closely resembled a guilty plea. *Id.*, 397 Wis. 2d 616, ¶17. However, we conclude that the commonality with *Beyer* arises not from the procedure employed—Rogers was not stipulating to a de facto guilty plea. Rather, *Beyer* instructs us that not all proceedings constitute a trial merely because the proceeding is so labeled. *See id.*, ¶16.

¶22 Trial counsel argues that Rogers was not stipulating to the status element of the felony-equivalent weapons possession charge, and it is in fact Rogers's right to require the State to prove the elements of the crime with which he was charged. Our review of this matter, however, considers whether the circuit court had a manifest necessity to declare a mistrial in an exercise of discretion. Therefore, we are not reviewing the merits of the underlying issue of whether the stipulated record of Rogers's juvenile adjudication would compel the court to find that the State had proven his status under WIS. STAT. § 941.29 of a felony-equivalence conviction, regardless of Dane County's conclusions in 2017. The circuit court recognized it could not rely upon a stipulated record as offered here

11

and consider the proceedings a court trial. *See **Beyer***, 397 Wis. 2d 616, ¶¶19-20. We conclude that the circuit court acted under manifest necessity to declare a mistrial in order to ensure that the court satisfied its fact-finding mission and Rogers would receive a fair and full court trial, as requested.[3]

## CONCLUSION

¶23 For the reasons stated above, we conclude that the circuit court acted within its discretion to declare a mistrial and that there was manifest necessity to restart the proceedings. Therefore, the circuit court did not err when it denied Rogers's motion to dismiss. We remand to the circuit court for further proceedings consistent with this decision.

*By the Court.*—Petition for leave granted; order affirmed and cause remanded for further proceedings.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.

---

[3] Although we review this case under the posture of the court's discretion to grant a mistrial, we consider as well that if these proceedings did not constitute a trial, then jeopardy would not have attached. As Rogers's trial counsel stated and the State echoed on appeal: "How can [the court] declare a mistrial if we hadn't had a trial?" Under that paradigm, without an attachment of jeopardy, there would be no risk of double jeopardy.